Our last case of the day is Velazquez Olais v. Bondi. Mr. Breskman May it please the court. The agency had jurisdiction to reopen this removal order pursuant to its own authority. Let me tell you what I see is the problem in this case. I understand that the removal order, the 2018 removal order, has in fact been executed. Correct. And your client was removed under this order. Right. So what is left? I can understand that the agency could reinstate it and propose to remove or it could file a new proceeding. Has it reinstated the 2018 order? Not at this time. No. The agency's brief says it's opening a new proceeding. And that leads to the question, since there appears to be no outstanding removal order binding your client, what there can possibly be? You have to wait until a new removal order is entered. Well, Your Honor, thank you for bringing that up. We believe the fact that there still is this removal order that has not been rescinded as Your Honor said. It's been executed. It's over. But it has... It's like a prison sentence that's been fully served. You can't challenge it after it's over. But there are ongoing legal consequences for this removal order. There might be ongoing legal consequences if it's reinstated. Well even so... But it hasn't been. Well, Your Honor, the government has not agreed not to reinstate the order. If they reinstate the order, then your client will have whatever rights are available to an alien whose removal order is reinstated. But it hasn't been reinstated. Your Honor, there's the cloud hanging over her, as we mentioned, of criminal liability under 8 U.S.C. 1326. The government concedes that they could try to bring a case under 8 U.S.C. 1326 where they say her remedy would be the panoply of rights that she has in a criminal proceeding. Your Honor, and what's still affecting her now is the removal order... But she has not been indicted for illegal reentry. Things that might happen, this goes back to our first case. Things that might happen in the future and haven't happened aren't litigable. You have to wait until they happen. There's something else that we mentioned in our reply brief. Is she petitioning for review of the underlying 2018? Well, Your Honor, we certainly haven't petitioned for review and we have not challenged the 2018 order directly. If this court wanted to construe our petition as challenging the 2018 order, I think this court could now after Riley, considering the 30 days is not jurisdictional, but that's something we certainly haven't argued. Your Honor, one thing that is still in place, addressing your question, Judge Easterbrook, is that she is inadmissible to the country under 1182A9C because of this removal order now. It creates an inadmissibility bar to adjust her status or get a green card through a U.S. consulate abroad through her U.S. citizen wife. So that is an ongoing consequence right now. The inadmissibility provisions that the 2018 removal order erects and bars her from adjusting status or getting her green card abroad. Your email asks that they rescind the final administrative removal order far out. What authority would they even have to do that? It's done. Thank you for the question. They have their own inherent authority to review their own decisions, to make sure that the administrative process has integrity, and they also have authority under 8 CFR 103.5. I don't understand that remotely. What's actually in the statute is a time limit on making post-removal decisions. And that time limit was so extraordinarily transgressed here that I don't even see authority to do it. But more to the point, you wait until an adverse order is entered. Your Honor, what we're challenging is the agency's final action. They received our request, our motion to reopen. Motions to reopen are subject to time limits. Do you contend that you met the time limit? Your Honor, we certainly talked about equitable tolling in our motion. In other words, you don't. We did not file within 30 days. It's 90 days, I think, for motions to reopen. Motions to reconsider are 30 days. Well, 8 CFR. Thank you, Your Honor. We did not file. What we did was we filed within 30 days of the final agency action definitively resolving and denying our request to reopen. And this is not informal chatter, Your Honor. This was after months of review. We filed the motion to reopen in July. We got a response in January. They discussed with us that they were reviewing the motion. As they conceded, it was after a consultation with DHS supervisor, after consultation with DHS attorneys, and they issued a response that, as I mentioned, definitively denied our reopening and firmly left in place the removal order from 2018. This is classic final agency action, consummation of the agency process and definitive consequences. So, yes, Your Honor, they have not reinstated it, but they certainly can reinstate the order right now. There's nothing preventing them from reinstating the order under 8 U.S.C. 1231A5. As I mentioned, there's nothing preventing them from trying to indict her right now under 8 U.S.C. 1326. And the fact that the removal order is outstanding and existed makes her inadmissible to the country under 8 U.S.C. 1182A9C. So, Your Honors, this certainly has ongoing legal consequences. And our position is narrow. Review was available when there's a denied motion to reopen, which asserts a concrete legal defect affecting the validity of the removal order. And that's what we did here. We asserted a defect. The agency was presented with evidence that the sole predicate conviction to the removal order had been vacated, nunk, pro-tunk, because of a serious procedural violation which occurred, and that she was charged with something where the judge in the state court case did not find probable cause to that charge. They were presented with evidence. The agency did not engage with any of the facts. They did not apply the agency's own binding precedent. And they produced a decision that did not allow anyone to understand what their basis was. This was a one-line email response, not engaging agencies' binding precedent, not engaging with any of the facts, and not leaving us with any idea why they decided what they did. I see I'm into my rebuttal time. I'd like to reserve the balance of my time. Certainly, Mr. Grisswin. Mr. Insania. Good morning, Your Honors. May it please the Court. Andrew Insania on behalf of the Attorney General. Excuse me. Petitioner keeps saying— I would like you to bring us up to date on what's going on with the proceeding begun in July. Your brief speaks as of September 9. What's happened since then? My understanding is removal proceedings are ongoing, Your Honor. And— Nothing has happened since September 9? Not that I'm aware of, Your Honor, no. Your client is—sorry. Is the petitioner in custody? Not that I'm aware of, Your Honor. All right. As I understand the agency's position, it's been pressed in quite a number of courts, is that somebody who is not eligible for admission to the United States at all, custody is mandatory. But I take it it hasn't occurred. Your Honor, I think the case presents a bit more complexity because an NTA has been issued. Whether or not petitioner will or will not be detained is really not up to the Department of Justice. That's basically where we are—where we were on September 9, which is the last date in your brief.  Correct, Your Honor. And really, look, this court is well aware that jurisdiction is asserted here under Section 1252. That requires a final removal order. It doesn't require what petitioner keeps saying today to this court, which is final agency action. That sounds an awful lot like an attempt to import APA language into this case. But again, jurisdiction was asserted under 1252. Jurisdiction was asserted to review the email, not the underlying removal order. So any attempt so far in this process to try to even suggest that this court review a 2018 order, it's well inappropriate at this point, Your Honor. We are so far into this proceedings. So really, there's no great complexity here. But where's the final removal order? There is none. It was executed in 2018. It has not been reinstated. There's been no removal order issued by the immigration judge. And at the time when the immigration judge—if the immigration judge issues a removal order, then in proper due course, the court can review it and any decisions made therein. That includes the newly raised concerns about inadmissibility, which whether that's correct or not, that's up to the immigration judge to decide in the first instance. But again, Your Honor, there's just nothing left for this court to review. There's no removal order, and that's the basis of this court's jurisdiction. There's really nothing more that I need to say unless Your Honors have any further questions. Thank you, Your Honors. Thank you, counsel. Anything further, Mr. Breskman? Thank you. Section 1252A1 authorizes review of final orders of removal. And the Supreme Court and this court has long recognized that denials of reopening tied to those orders are reviewable because they determine whether the order remains in effect. And that's 1252B6. The fact that the removal order has been executed should have no effect on this court's jurisdiction. The final administrative removal orders are reviewable under 1252. The only removal order that's not reviewable under 1252 is under 8 U.S.C. 1225. And that is not what we're here for. We're challenging the agency's refusal to reopen the removal order, and this court has jurisdiction to review that under 1252B6. And I know that Riley, Guzman, Chavez, and Nasrallah are discussed a lot by my friend, and those cases involve collateral proceedings that do not affect the validity of the underlying removal order. And this is where the government's brief is incorrect. On pages 7, 8, 13, where they claim that we're not challenging the validity of a removal order. And we are. That is precisely what we're doing. And this case is rather unusual. When the sole statutory predicate— I must say, I don't even understand that argument. You are contending that legal developments in state court after the removal order was entered might affect the prospective force of an order that's already been executed. What happened in state court after your client illegally reentered the United States doesn't affect the validity of the 2018 order. I can't even see an argument that it affects the validity of the 2018 order. Your Honor, that's precisely what we're saying. We're saying the agency didn't apply their own precedent in matter of pickering, which is agency precedent, which says that once a conviction has been vacated on substantive or procedural deficiencies— That's an argument about the motion for reconsideration and not about the validity of the order as of 2018. Your Honor, the 2018 order is still hanging over her head, and that's what we're challenging through our motion to reopen. Thank you. Thank you. The case is taken under advisement, and the court will be in recess.